## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCUS SPENCER, SCOTT CHANG, JESSICA BURGESS, JEFFREY WILLIAMS, and JENNIFER MANN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PNC BANK, NATIONAL ASSOCIATION,<br><br>Defendant. | Case No. 2:24-cv-357<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Marcus Spencer, Scott Chang, Jessica Burgess, Jeffrey Williams, and Jennifer Mann, (collectively, "Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, allege the following against Defendant PNC Bank, National Association ("PNC" or "Defendant"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.     When dealing with consumer contracts, normally presented on a take-it-or-leave-it basis, legislatures around the nation have statutorily prohibited companies from taking advantage of customers through unfair acts. In the context of consumer fees, whether a fee is considered unfair frequently turns on a simple principle: if the consumer will not receive a commensurate benefit from the fee, then the consumer must have had a practical opportunity to avoid the fee.

2.     Nowhere can this principle be seen more clearly than in the banking sector. Financial institutions earn enormous profits by charging fees for their services. For example, banks allow customers to write checks, and in return the customers promise that there will be funds in their account to cover the check when it is deposited. If a customer breaks this understanding and writes a check without the funds to cover it (i.e., bounces a check), the bank will charge a fee to

the customer that wrote the check, which the customer could have avoided by ensuring sufficient funds were in the account.

3.      On the other side of the transaction, however, the recipient of the check typically has no way to know whether a check he or she deposits is going to bounce. Because the depositor could not have reasonably known the check was bad, it is unfair to charge the depositor a fee for returning the check.

4.      By contrast, the bank maintains highly sophisticated systems for clearing checks and knows, or should know, when the person that wrote the check does not have sufficient funds to cover the check or has access to the reasons that the check may not otherwise be valid.

5.      Nevertheless, despite having these capabilities, PNC routinely charges and collects what it refers to as "Return of Deposited Item Fee" fees. By charging these Return of Deposited Item fees, PNC unfairly targeted its customers with financial penalties for faulty checks the customers had no hand in issuing. Plaintiffs were shocked when they were charged these fees because they did nothing wrong yet were penalized by PNC. There was nothing Plaintiffs could do to avoid — or even anticipate — a Return of Deposited Item fee assessed by PNC at the time the deposit was returned.

6.      By charging its customers significant fees in situations where the customer did nothing wrong and could not have avoided the fee through reasonable diligence, PNC acted in a manner that is unfair, oppressive, lacks good faith and is against public policy.

7.      Recent guidance from the Consumer Financial Protection Bureau ("CFPB") has reaffirmed the unlawful nature of PNC's Return of Deposited Item fee policy. In October 2022, the CFPB issued a compliance bulletin stating that it is an unfair act or practice for an institution to have a blanket policy of charging Return of Deposited Item fees anytime that a check is returned unpaid, irrespective of the circumstances or patterns of behavior on the account; the CFPB noted

that these fees cause substantial monetary injury for each returned item, which consumers cannot reasonably avoid because they lack information about and control over whether a check will clear.[1]

8.     California, among other States, has recognized the unfair nature of these fees and has recently amended the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 17200, *et seq*., to expressly prohibit "junk fees" where a business reveals unavoidable fees later in the buying process. As California Attorney General Rob Bonta noted in a press release: "These deceptive fees prevent us from knowing how much we will be charged at the outset. They are bad for consumers … [and] cost Americans tens of billions of dollars each year."[2]

9.     Accordingly, Plaintiffs, on behalf of themselves and the Class and Sub-classes (defined below), now seek to hold PNC accountable for their unlawful and unfair policy, and seek damages, restitution, and injunctive relief, as set forth below.

## PARTIES

10.     Plaintiff Marcus Spencer is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in the County of Lake and held a PNC checking account during the applicable statute of limitations period. Mr. Spencer opened his PNC account in Winthrop Harbor, Illinois. His account is, therefore, located in Illinois.

11.     Plaintiff Scott Chang is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in the County of Cook and held a PNC checking account during the applicable statute of limitations period. Mr. Chang opened his PNC account in Morton Grove, Illinois. His account is, therefore, located in Illinois.

---

[1]     Consumer Financial Protection Bulletin 2022–06, Unfair Returned Deposited Item Fee Assessment Practices (Oct. 26, 2022), available at: https://www.consumerfinance.gov/compliance/supervisory-guidance/cfpb-bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices/ (last accessed January 17, 2024).

[2]     Attorney General Bonta's Sponsored Bill to Ban Hidden Fees in California Signed into Law (Oct. 7, 2023), available at: https://oag.ca.gov/news/press-releases/attorney-general-bonta%E2%80%99s-sponsored-bill-ban-hidden-feescalifornia-signed-law (last accessed January 17, 2024).

12.    Plaintiff Jessica Burgess is, and at all times mentioned herein was, an individual citizen of the State of Florida residing in the County of Okaloosa and held a PNC checking account during the applicable statute of limitations period. Ms. Burgess opened her PNC account in Destin, Florida. Her account is, therefore, located in Florida.

13.    Plaintiff Jeffrey Williams is, and at all times mentioned herein was, an individual citizen of the State of Virginia residing in Alexandria and held a PNC checking account during the applicable statute of limitations period. Mr. Williams opened his PNC account in Alexandria, Virginia. His account is, therefore, located in Virginia.

14.    Plaintiff Jennifer Mann is, and at all times mentioned herein was, an individual citizen of the State of Pennsylvania residing in the County of Allegheny and held a PNC Checking account during the applicable statute of limitations period. Ms. Mann opened her PNC account in Pittsburgh, Pennsylvania. Her account is, therefore, located in Pennsylvania.

15.    Defendant PNC, N.A. is a financial services institution engaged in the business of providing retail banking services to consumers and businesses, including Plaintiffs and members of the putative Class and Sub-classes, which includes the issuance of checking and savings accounts. Defendant operates banking centers, and thus conducts business, throughout the States of Illinois, Florida, Virginia, and Pennsylvania, among others. PNC is a regional bank headquartered in Pittsburgh, Pennsylvania.

## JURISDICTION AND VENUE

16.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

17.     This Court has jurisdiction over Defendant because it operates in this District, has its principal place of business in this District, and a substantial part of the unlawful business practices which give rise to this action occurred in this District.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### I.     RETURN OF DEPOSITED ITEM FEES

19.     Return of Deposited Item fees are levied when a check is returned because it cannot be processed against the originator's account. In other words, when Person A writes a check to Person B and the check bounces or is returned unpaid, the bank charges Person B a fee even though Person B had no reasonable means of knowing the check would not clear. There are a multitude of reasons why a check someone received would bounce, nearly all of which lie entirely outside the control of the depositor. The reason could be insufficient funds, a stop payment order issued by the check writer, a closed or foreign account, or even a minor discrepancy on the check itself. Even though the depositor has no control over the check, the Return of Deposited Item fees charged can range from $5 to over $30 and often vastly exceed the actual cost of processing the returned check.

20.     Return of Deposited Item fees are widespread within the banking industry. Most major banks and financial institutions levy them as part of their standard fee structure. The ubiquitous and unavoidable nature of Return of Deposited Item fees has raised concerns about the fairness and predatory nature of imposing penalties on the depositor.  In fact, these fees are nothing more than veiled revenue-generating tools that penalize innocent depositors for the actions of others.

21.     Recognizing the potential for abuse, the CFPB issued published Bulletin 2022-06 on November 7, 2022 (the "Bulletin").  The Bulletin, entitled *Unfair Returned Deposited Item Fee Assessment Practices*, highlights the CFPB's concerns about deceptive practices related to Return

of Deposited Item fees, particularly in instances where fees are disproportionate to the actual costs incurred by the bank, or where customers are not adequately informed about the fees and their potential applicability.

22.     The CFPB deemed these fees unfair under the Consumer Financial Protection Act ("CFPA"). The CFPB took issue with financial institutions, like PNC, that charge consumers fees "for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account." The Bulletin provides in relevant part:

> The Consumer Financial Protection Act (CFPA) prohibits covered persons from engaging in unfair acts or practices. Congress defined an unfair act or practice as one that (A) "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and (B) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."
>
> Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.
>
> Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. **Depository institutions that charge Returned Deposited Item fees for returned checks impose concrete monetary harm on a large number of customers**.
>
> In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. **An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it.** Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But **a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account**. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution

> before depositing the check or be able to pass along the cost of the
> fee to the check originator.

87 FR 66940, 66941 (emphases added).[3]

23.     The CFPB focused on the lack of benefit to consumers and the disproportionality associated with these fees, finding that "[c]heck processing is a service made broadly available to all depositors of checks, and ***there is no separate benefit to consumers from having a deposited check returned, as opposed to paid***." *Id.* The CFPB further found that these fees are ***not*** "well-tailored to recoup costs" because "the fee is charged to depositors even where the depository institution incurs no such loss from the returned transaction, and institutions usually do not collect the fee in those limited circumstances where they actually incur a loss." *Id.* Evidently, the CFPB has signaled its intention to impose stricter oversight and raise legal challenges against these unfair and predatory practices.

## II.     PNC IMPOSED A BLANKET "JUNK FEE" ON ALL RETURNED DEPOSITS, REGARDLESS OF CAUSE

24.     PNC operates a vast retail network across the country. Within this network, PNC offers a diverse range of deposit accounts, including a range of different checking and savings options, to customers like Plaintiffs and the putative Class and Sub-class members.

25.     Upon opening a deposit account with PNC, each customer receives a comprehensive "Account Agreement" ("Account Agreement"), which — along with the schedule of fees — forms the contract between PNC and the customer and provides the terms and conditions governing each deposit account held with PNC. Acceptance of the Agreement's terms is mandatory for both opening and maintaining a deposit account with PNC.

---

[3] The Bulletin is available at https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed February 19, 2024).

26.    As currently written, the Account Agreement makes no mention of the Return of Deposited Item fees. However, prior versions of the Account Agreement and the Fee Schedules state that consumers will be charged $12.00 for each deposited item that is returned unpaid.

27.    While depositing a check, customers naturally anticipate receiving the funds. However, factors entirely outside their control can lead to a deposit being returned unpaid. This can occur due to the originator lacking sufficient funds, a stop-payment order issued by the originator, or even processing errors. These unpredictable circumstances can expose the depositor to unfair and unavoidable financial repercussions.

28.    Consumers attempting to deposit funds, such as Plaintiffs, lacked any control over whether the deposit would be returned, and had no way of protecting themselves against the possibility of the deposit being returned and being charged a fee. Depositors could not realistically verify with the originator's institution whether there were sufficient funds in the issuer's account before depositing an item.

29.    Conversely, PNC maintains sophisticated systems to make sure that checks submitted for deposit are valid for processing and that the person or business who wrote the check has sufficient money to pay it. Thus, PNC has the capability for determining the reason that a check is not valid and the person or business at fault for any invalid check.

30.    PNC's blanket policy of charging the Return of Deposited Item Fee on all returned deposits, regardless of the origin of the check or the cause of its return, is unfair and lacks good faith because it penalizes them for circumstances outside of their control.

### III.    PNC CHARGED PLAINTIFFS RETURN OF DEPOSITED ITEM FEES

#### A.    <u>Plaintiff Marcus Spencer</u>

31.    Plaintiff Marcus Spencer opened a PNC Standard Checking account in or around Winthrop Harbor, Illinois.

32.    Mr. Spencer's Account was located in the State of Illinois at the time he opened the account and remains so to this day.

33.     On or around November 1, 2021, Mr. Spencer attempted to deposit a check into his PNC account.

34.     At the time he attempted to deposit the check into his PNC account, Mr. Spencer had no reason to believe that the check would be returned unpaid.

35.     On or around November 2, 2021, to Mr. Spencer's surprise and by no fault of his own, the check he deposited was returned unpaid. PNC charged Mr. Spencer a Return of Deposited Item fee of $12.00. The Return of Deposited Item fee was deducted from the balance of Mr. Spencer's account.

36.     Because the $12 Return of Deposited Item fee which PNC charged Mr. Spencer was assessed pursuant to PNC's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding his attempt to deposit the check into his account, the Return of Deposited Item fee was unfair and unlawful.

### B. **Plaintiff Scott Chang**

37.     Plaintiff Scott Chang opened a PNC Standard Checking account in or around Morton Grove, Illinois.

38.     Mr. Chang's Account was located in the State of Illinois at the time he opened the account and remains so to this day.

39.     On or around April 5, 2021, Mr. Chang attempted to deposit a check into his PNC account.

40.     At the time he attempted to deposit the check into his PNC account, Mr. Chang had no reason to believe that the check would be returned unpaid.

41.     On or around April 6, 2021, to Mr. Chang's surprise and by no fault of his own, the check he deposited was returned unpaid. PNC charged Mr. Chang a Return of Deposited Item fee of $12.00. The Return of Deposited Item fee was deducted from the balance of Mr. Chang's account.

42.     Because the $12 Return of Deposited Item fee which PNC charged Mr. Chang was assessed pursuant to PNC's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding his attempt to deposit the check into his account, the Return of Deposited Item fee was unfair and unlawful.

C.     **Plaintiff Jessica Burgess**

43.     Plaintiff Jessica Burgess opened a PNC Standard Checking account in or around Destin, Florida.

44.     Ms. Burgess' Account was located in the State of Florida at the time she opened the account and remains so to this day.

45.     On or around January 20, 2022, Ms. Burgess attempted to deposit a check into her PNC account.

46.     At the time she attempted to deposit the check into her PNC account, Ms. Burgess had no reason to believe that the check would be returned unpaid.

47.     On or around January 21, 2022, to Ms. Burgess' surprise and by no fault of her own, the check she deposited was returned unpaid. PNC charged Ms. Burgess a Return of Deposited Item fee of $12.00. The Return of Deposited Item fee was deducted from the balance of Ms. Burgess' account.

48.     Because the $12 Return of Deposited Item fee which PNC charged Ms. Burgess was assessed pursuant to PNC's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Return of Deposited Item fee was unfair and unlawful.

D.     **Plaintiff Jeffrey Williams**

49.     Plaintiff Jeffrey Williams opened a PNC Standard Checking account in or around Alexandria, Virginia.

50.     Mr. Williams' Account was located in the State of Virginia at the time he opened the account and remains so to this day.

51.    On or around January 18, 2022, Mr. Williams attempted to deposit two checks into his PNC account.

52.    At the time he attempted to deposit the checks into his PNC account, Mr. Williams had no reason to believe that the checks would be returned unpaid.

53.    On or around January 19, 2022, to Mr. Williams' surprise and by no fault of his own, the checks he deposited were returned unpaid. PNC charged Mr. Williams two Return of Deposited Item fees of $12.00 each. The Return of Deposited Item fees were deducted from the balance of Mr. Williams' account.

54.    Because the $12 Return of Deposited Item fees which PNC charged Mr. Williams were assessed pursuant to PNC's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding his attempt to deposit the check into his account, the Return of Deposited Item fee was unfair and unlawful.

E.    **Plaintiff Jennifer Mann**

55.    Plaintiff Jennifer Mann opened a PNC Standard Checking account in or around Pittsburgh, Pennsylvania.

56.    Ms. Mann's Account was located in the State of Pennsylvania at the time she opened the account and remains so to this day.

57.    On or around January 8, 2023, Ms. Mann attempted to deposit a check into her PNC account.

58.    At the time she attempted to deposit the check into her PNC account, Ms. Mann had no reason to believe that the check would be returned unpaid.

59.    On or around January 9, 2023, to Ms. Mann's surprise and by no fault of her own, the check she deposited was returned unpaid. PNC charged Ms. Mann a Return of Deposited Item fee of $12.00. The Return of Deposited Item fee was deducted from the balance of Ms. Mann's account.

60.     Because the $12 Return of Deposited Item fee which PNC charged Ms. Mann was assessed pursuant to PNC's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Return of Deposited Item fee was unfair and unlawful.

## CLASS DEFINITION AND ALLEGATIONS

61.     Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated.

62.     Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> **Nationwide Class** (the "**Class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with PNC and were charged a Return of Deposited Item fee by PNC.

> **Illinois State Sub-class** (the "**Illinois Sub-class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with PNC located in Illinois and were charged a Return of Deposited Item fee by PNC.

> **Pennsylvania State Sub-class** (the "**Pennsylvania Sub-class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with PNC located in Pennsylvania and were charged a Return of Deposited Item fee by PNC.

63.     Excluded from the Class and Sub-classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

64.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

65.     The proposed Class and Sub-classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

66.     Plaintiffs expressly disclaim any intent to seek recovery in this action for personal injuries that they or any Class or Sub-class member may have suffered.

67.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class and Sub-classes are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that each proposed Class and Sub-class contains thousands of accountholders who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

68.     **Commonality.**  This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendant's assessment of Return of Deposited Item fee within the applicable statute of limitations was unfair, deceptive, or misleading;

b.  Whether Defendant breached its Implied Covenant of Good Faith and Fair Dealing by assessing Returned Deposit Item Fees on transactions in cases where the accountholder had no reason to believe the deposit would be returned unpaid;

c.  Whether Plaintiff and the Class and Sub-class suffered damages as a result of Defendant's assessment of Returned Deposit Item Fees;

d.  Whether Defendant was unjustly enriched as a result of charging Plaintiffs and the Class and Sub-classes the "Return of Deposited Item Fees";

e.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, codified at 815 Ill. Comp. Stat. § 505/1, *et seq*. (the "ICFA") (as to the Illinois Sub-Class);

f.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, codified at 73 Pa. Stat. Ann. §§ 201-1 *et. seq* (the "UTPCPL") (as to the Pennsylvania Sub-Class);

g.  The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

   h.   Whether Plaintiffs and the Class and Sub-classes are entitled to declaratory and injunctive relief and the nature of that relief.

69.    **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class and Sub-classes, because, *inter alia*, all Class and Sub-class members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein.  Moreover, Plaintiffs' claims are typical of the Class and Sub-class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Sub-classes. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-classes.

70.    **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class and Sub-classes. Plaintiffs and the Class and Sub-classes each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Return of Deposited Item fees. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Sub-classes and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class or Sub-classes, and Defendant has no defenses unique to Plaintiffs.

71.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Sub-class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or one of the Sub-classes, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class or Sub-class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the

court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

72.     Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class and Sub-classes, and other equitable relief on grounds generally applicable to the entire Class and the Sub-classes. Unless a Class and Sub-classes are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Class and Sub-classes will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from the violations alleged, and the members of the Class and Sub-classes and the general public may continue to be unfairly treated.

73.     Defendant has acted and refused to act on grounds generally applicable to the Class and Sub-classes, making final injunctive relief appropriate with respect to the Class and Sub-classes as a whole.

<u>**COUNT I**</u>
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiffs and the Class)**

74.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-73 as if fully set forth herein.

75.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

76.     A covenant of good faith and fair dealing is implied in Plaintiffs' and the Class members' Deposit Agreements with Defendant. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to

its form. Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

77.    The material terms of the Deposit Agreement therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiffs' and the Class members' rights and benefits under the contract.

78.    Plaintiffs and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

79.    As alleged herein, Defendant breached the implied covenant of good faith and fair dealing by systematically charging Plaintiffs and the Class members Returned Deposit Item Fees for attempting to deposit checks that could not be deposited irrespective of the facts and circumstances surrounding the accountholder's attempt to deposit the check into their account.

80.    Defendant had the discretion under its Account Agreements to determine the circumstances under which it would impose Returned Deposit Item Fees.  Defendant exercised that discretion in a manner that benefitted Defendant to the detriment of Plaintiffs and Class Members.  Rather than use its sophisticated systems to attempt to identify the person or business at fault for providing an invalid check, Defendant instituted a blanket policy presuming Plaintiff and Class Members were at fault.

81.    Defendant's actions to maximize its revenue from Returned Deposit Item Fees impedes the right of Plaintiff and other members of the Class to receive benefits that they reasonably expected to receive under the contract, as the money entrusted to Defendant for their banking activities was reduced.

82.    On information and belief, Defendant's actions as alleged herein were performed

16

in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Defendant's revenue from Returned Deposit Item Fees at the expense of their customers, in contravention of Plaintiffs' and the Class members' reasonable expectations.

83.    Plaintiffs and members of the Class have sustained damages as a result of Defendant's conduct as alleged herein.

84.    As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

**COUNT II**
**UNJUST ENRICHMENT**
**(Plaintiffs, on behalf of themselves and the Class)**
***(Plead in the alternative to Count I)***

85.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–84 as if fully set forth herein.

86.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

87.    Plaintiffs and the members of the Class conferred a benefit on Defendant, which Defendant knew about, when they enrolled in Defendant's deposit accounts and were charged Return of Deposited Item Fees.

88.    Plaintiffs and the members of the Class were, and many continue to be, customers of Defendant with deposit accounts. They reasonably believed that PNC would not charge them unreasonable fees beyond their control. Plaintiffs and members of the Class suffered financial losses when they were charged Return of Deposited Item fees in the form of funds deducted from their accounts.

89.    By charging Return of Deposited Item fees, Defendant unjustly enriched itself by taking a benefit, in the form of a $12 charge each time an item was returned, from each of their customers' accounts, regardless of their own action, without providing any additional value to their

17

customers, including Plaintiffs and members of the Class. Defendant has accepted and retained these benefits even though Defendant failed to provide any service or product to the customer and failed to provide any manner to avoid these fees, making Defendant's retention of them unjust.

90.     By its wrongful acts and omission described herein, including charging fees for actions beyond the customer's control, and for which consumers had absolutely no way of avoiding, Defendant was unjustly enriched at the expense of Plaintiffs and the members of the Class.

91.     Plaintiffs and the Class's detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

92.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative Class members.  It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

93.     Plaintiffs and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

94.     Plaintiffs and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

95.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## COUNT III
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ICFA")**
**815 ILL. COMP. STAT. ("ILCS") § 505/1, *ET SEQ.***
**(Plaintiffs Spencer and Chang on behalf of themselves and the Illinois Sub-class)**

96.     Plaintiffs Spencer and Chang repeat and reallege each and every allegation contained in paragraphs 1–95 as if fully set forth herein.

97.    Plaintiffs Spencer and Chang bring this claim individually and on behalf of the members of the Illinois Sub-class against Defendant.

98.    Plaintiffs Spencer and Chang maintain PNC accounts located in Illinois.

99.    Plaintiffs Spencer and Chang and the Illinois Sub-class members are persons within the context of the ICFA, 815 ILCS § 505/1(c), and Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

100.    At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f).

101.    Plaintiffs Spencer and Chang and the proposed Illinois Sub-class are "consumers" within the meaning of the ICFA, 815 ILCS § 505/1(e).

102.    The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2. This includes conduct that "creates a likelihood of confusion or misunderstanding" irrespective of whether the person has been in fact misled, deceived, or damaged thereby. 815 ILCS § 505/2; 815 ILCS § 510/2(a)(12).

103.    The ICFA "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services*, 536 F.3d 663, 666 (7th Cir. 2008) (*citing* the Illinois Supreme Court's holding in *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (Ill. 2022)).

104.    The ICFA provides a broad private right of action for "[a]ny person who suffers actual damage as a result of a violation of this Act" and enables such person to bring an action against any business entity that violates the statute. 815 ILCS § 505/10a(a); 815 ILCS § 505/1(c).

In addition, the ICFA provides for injunctive relief where appropriate as well as reasonable attorney's fees and costs. 815 ILCS § 505/10a(c).

105.   Defendant charged Return of Deposited Item Fees in the regular course of its business and in the course of conducting trade and commerce and charged Plaintiffs Spencer and Chang a Return of Deposited Item Fee in the course of conducting trade and commerce. Defendant unilaterally imposed such charges on Plaintiffs Spencer and Chang and the members of the Illinois Sub-class members.

106.   Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."   12 U.S.C. § 5531(c)(1).

107.   The CFPB — through Bulletin 2022-06 — has determined that Returned Deposited Item Fees, such as those charged by PNC, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

108.   Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Return of Deposited Item fees is deceptive and unfair and constitutes a violation of the ICFA.

109.   Plaintiffs Spencer and Chang and all Illinois Sub-class members sustained actual damages as a result of Defendant's unfair practice. The actual damages sustained by Plaintiffs Spencer and Chang and all Illinois Sub-class members were caused by Defendant's unfair practice of charging Return of Deposited Item Fees. In other words, had Defendant not engaged in the unfair practice of charging Return of Deposited Item Fees, Plaintiffs Spencer and Chang and the Illinois Sub-class members would not have sustained damages. The actual damage is measured by the amount of the Return of Deposited Item Fees charged by Defendant.

110.    By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes an unfair practice committed in the course of trade and commerce, intended to be relied upon by accountholders, that proximately caused actual damages to Plaintiffs Spencer and Chang and the Illinois Sub-class, in violation of 815 ILCS § 505/2, and Defendant is liable to Plaintiffs Spencer and Chang and the Illinois Sub-class for the damages they have sustained as a result of Defendant's actions.

111.    Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Sub-class are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorneys' fees under 815 ILCS § 505/10a.

**COUNT IV**
**VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER**
**PROTECTION LAW ("UTPCPL")**
**73 PA. STAT. ANN. §§ 201-1 *ET. SEQ.***
**(Plaintiff Mann on behalf of herself and the Pennsylvania Sub-class)**

112.    Plaintiff Mann repeats and realleges each and every allegation contained in paragraphs 1–111 as if fully set forth herein.

113.    Plaintiff Mann brings this claim individually and on behalf of the members of the Pennsylvania Sub-class against Defendant.

114.    Plaintiff Mann maintained a PNC account located in Pennsylvania throughout the applicable statute of limitations period.

115.    Plaintiff Mann and Defendant are "persons" as defined by 74 P.S. §201-2(2).

116.    At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the UTPCPL, 73 P.S. § 201-2(3).

117.    The UTPCPL declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 P.S. § 201-3. The statute creates a private right of action in persons upon whom unfair methods of competition and unfair or deceptive acts or practices are employed and who as a result, sustain an ascertainable

loss. 73 P.S. § 201-9.2. Section 2(4)(xxi) of the UTPCPL prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

118.    Plaintiff Mann purchased services from Defendant primarily for personal, family or household purposes.

119.    Plaintiff Mann suffered an ascertainable loss of money in that she was charged for and paid a Return of Deposited Item fee to Defendant.

120.    Plaintiff Mann's loss of money occurred as a result of the use or employment by Defendant of fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

121.    Charging Return of Deposited Item fees in the context of consumer retail deposit accounts was an unfair and deceptive that disproportionately impacted vulnerable consumers, which is fundamentally unfair and exploits disadvantaged groups. These fees, imposed regardless of the actions of the account holder, are inherently unfair.

122.    Defendant charged Return of Deposited Item Fees in the regular course of its business and in the course of conducting trade and commerce and charged Ms. Mann a Return of Deposited Item Fee in the course of conducted trade and commerce. Defendant unilaterally imposed such charges on Ms. Mann and the members of the Pennsylvania Sub-class members.

123.    Defendant violated the UTPCPL by charging unlawful fees on its customers in the form of Return of Deposited Item Fees, which its customers could do nothing to avoid. There was no justification for imposing these blanket fees during the applicable statute of limitations, which the CFPB has deemed "junk fees." Charging Return of Deposited Item Fees is inherently unfair where the customer has no control and must incur penalties by no fault of their own. By imposing these fees on Plaintiff Mann and the members of the Pennsylvania Sub-class, Defendant engaged in unfair business practice in violation of the UTPCPL. *See* §§ 201-2(4)(ix), (xxi) and 201-3.

124.    Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury

is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

125.    The CFPB — through Bulletin 2022-06 — has determined that Return of Deposited Item Fees, such as those charged by PNC, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

126.    Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Deposited Item Returned Fees is deceptive and unfair and constitutes a violation of the UTPCPL.

127.    Defendant wrongfully obtained money from its customers with accounts located in Pennsylvania, including Plaintiff Mann.

128.    Defendant's unlawful collection of the Return of Deposited Item Fees during the applicable statute of limitations constitutes consumer-oriented conduct. These fees are part of a broader scheme of imposing fees and charges in connection with maintaining an account at PNC and impacts millions of customers. The improper and unlawful Return of Deposited Item Fees represent funds in the possession of Defendant that rightfully belong to members of the Pennsylvania Sub-class, including Plaintiff Mann.

129.    Plaintiff Mann and the members of the Pennsylvania Sub-class justifiably relied on Defendant's conduct under the account agreements to their detriment. Plaintiffs relied upon Defendant to avoid charging and collecting Return of Deposited Item fees based upon a blanket policy that assumed that Plaintiffs could have avoided such fees.

130.    Plaintiff Mann and the Members of the Pennsylvania Sub-class justifiably relied on Defendant to exercise its discretion in establishing a Return of Deposit Item fee policy that would not benefit Defendant to the detriment of Plaintiffs.

131.    Plaintiff Mann and the Members of the Pennsylvania Sub-class justifiably relied on Defendant to exercise its discretion in providing its account services to use its sophisticated

systems and knowledge to identify the reason for a Deposited Item Return and to avoid charging Plaintiff and the Sub-class Deposited Item Return fees.

132.    As alleged above, pursuant to PNC's Account Agreements, whether explicitly or implicitly, PNC charged customers unlawful Return of Deposited Item Fees. Plaintiff Mann and the members of the Pennsylvania Sub-class justifiably relied on those Account Agreement and schedule of fees when they opened and maintained accounts with PNC.

133.    Plaintiff Mann and the Pennsylvania Sub-class sustained actual damages as a result of Defendant's deceptive and unfair practice. The actual damages sustained by Ms. Mann and all Pennsylvania Sub-class members were proximately caused by Defendant's unfair practice of charging Deposited Item Returned Fees. In other words, had Defendant not engaged in the unfair practice of charging Deposited Item Returned Fees, Ms. Mann and the Pennsylvania Sub-class members would not have sustained an ascertainable loss. That ascertainable loss is measured by the amount of the Returned of Deposited Item Fees charged by Defendant.

134.    Plaintiff Mann and the Pennsylvania Sub-class has been damaged in the amount of the Return of Deposited Fees collected by Defendant from customers with accounts located in Pennsylvania. Plaintiff Mann and the Pennsylvania Sub-class are entitled to reimbursement in amounts to be determined, but not less than the full amount of the fees, and interest thereon, which Defendant has taken from Plaintiff Mann and members of the Pennsylvania Sub-class.

135.    By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes a deceptive and unfair practice committed in the course of trade and commerce, that caused actual damages to Ms. Mann and the Pennsylvania Sub-class, in violation of the UTPCPL, and Defendant is liable to Ms. Mann and the Pennsylvania Sub-class for the damages they have sustained as a result of Defendant's actions.

136.    Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff Mann and the Pennsylvania Sub-class are entitled to relief, including restitution, actual damages, statutory damages, treble damages, punitive damages, costs, and attorneys' fees under 73 P.S. § 201-9.2.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment against Defendant in the form of an Order:

A.      Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' undersigned attorneys as Class Counsel to represent the Class and Sub-class Members;

B.      Naming Plaintiffs Spencer and Chang as the representatives of the Illinois Sub-class;

C.      Naming Plaintiff Mann as the representative of the Pennsylvania Sub-class;

D.      Declaring that Defendant's conduct violated the laws referenced herein;

E.      Finding in favor of Plaintiffs and the Class and Sub-classes on all counts asserted herein;

F.      Awarding actual, consequential, punitive, statutory and treble damages;

G.      Awarding applicable prejudgment and post-judgment interest on all amounts awarded;

H.      For injunctive relief as pleaded or as the Court may deem proper;

I.      For disgorgement and restitution to Plaintiffs and the Class and/or Sub-class members of all monies received or collected from Plaintiffs and the Class and/or Sub-class members and all forms of equitable relief;

J.      Awarding Plaintiffs and the Class and Sub-classes' attorneys reasonable attorneys' fees and expenses and costs of suit;

K.      Awarding damages in an amount to be determined at trial; and

L.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all triable issues.

25

Dated:  March 18, 2024         Respectfully submitted,


By:  s/James M. Pietz

James M. Pietz
Pa. I.D. #55406
Ruairi McDonnell
Pa. I.D. #316998
John P. Worgul (admission application pending)
Pa. I.D. #325374
Feinstein Doyle Payne & Kravec, LLC
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone:  412-281-8400
Facsimile:  412-281-1007
Email:  jpietz@fdpklaw.com
Email:  rmcdonnell@fdpklaw.com
Email:  jworgul@fdpklaw.com

Lisa R. Considine*
David J. DiSabato*
Oren Faircloth*
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: lconsidine@sirillp.com
Email: ddisabato@sirillp.com
Email: ofaircloth@sirillp.com
* Special appearance to be filed

*Attorneys for Plaintiffs and the Proposed Class*